**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**COLUMBIA DIVISION**

| | | |
|---|---|---|
| **SHAUN CROSS,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **No. 1:17-cv-00066** |
| | ) | **Judge Campbell/Brown** |
| **RANDY LEE, WARDEN,** | ) | |
| | ) | |
| **Respondent.** | ) | |

**To: The Honorable William L. Campbell, Jr., United States District Judge**

## REPORT AND RECOMMENDATION

Petitioner Shaun Cross, a state prisoner at the Trousdale Turner Correctional Center in
Hartsville, Tennessee, filed a *pro se* petition for the writ of habeas corpus under 28 U.S.C. § 2254.
This matter is before the Court on Petitioner's Motion for Leave to File an Amended Petition.
(Doc. No. 14). The Respondent filed a response in opposition. (Doc. No. 15). For the reasons set
forth below, the Magistrate Judge **RECOMMENDS** that the Petitioner's Motion for Leave to File
an Amended Petition (Doc. No. 14) be **DENIED**.

## I. FACTS AND PROCEDURAL BACKGROUND

The Circuit Court for Marshall County, Tennessee, succinctly summarized the factual
background in Petitioner's state criminal case as follows:

> The Defendant [Shaun Cross] was one of several defendants charged in connection
> with a drug deal that was aborted when the drug dealers became suspicious that a
> sale of cocaine to an individual in Marshall County might have been arranged by a
> CI. The Defendant was a passenger in a vehicle which was delivering an ounce of
> cocaine to a CI for $1,400.00. When the vehicle approached the prearranged
> exchange site, the dealers suddenly drove off without effectuating the sale. The car
> was subsequently stopped and Ms. Laura Carter was found to be in possession of
> 26.93 grams of cocaine, which she said the Defendant had handed to her when the

stop occurred. Ms. Carter had brokered the deal between the Defendant and the CI. Another defendant was tried and convicted by a jury.

(Doc. No. 11-1 at 73).

A grand jury indicted Petitioner on one count of possession with intent to sell 26 grams or more of cocaine, and one count of possession with intent to deliver 26 grams or more of cocaine. (*Id.* at 39–42). The court appointed attorney Debbie Zimmerle ("original counsel") to represent Petitioner. (Doc. No. 1 at 2; Doc. No. 11-1 at 39–42). At some point, Petitioner's family hired attorney Brock Parks ("successor counsel") to represent Petitioner as well. (Doc. No. 1 at 2; Doc. No. 11-2 at 48).

On October 2, 2014, Petitioner pleaded guilty to the charge for possession with intent to sell, and the state dismissed the charge for possession with intent to deliver. (Doc. No. 11-1 at 41-42). As part of the plea agreement, Petitioner agreed to serve a sentence of 25 years' imprisonment as a persistent offender. (*Id.* at 39, 42). At the plea acceptance hearing, the trial court judge explained what the state would be required to prove to convict Petitioner of possession with intent to sell 26 grams or more of cocaine. (Doc. No. 11-3 at 12–14). Among other things, the judge specifically explained that the state would have to prove that Petitioner "knowingly possessed cocaine." (*Id.* at 12). The judge stated:

> There are two kinds of possession in the law: Actual and constructive. A person who has direct, physical control over an object at a given time is in actual possession of it. If you had the cocaine in your right hand, you have actual, direct possession of it.
>
> On the other hand, a person who does not have actual possession, but knowingly has both the power and the intention at a given time to exercise dominion and control over an object is then in constructive possession of it. So, two ways to have possession of that cocaine.

(*Id.* at 13). Petitioner testified that he did not have any questions about the judge's explanation of

the state's burden of proof to convict him of possession with intent to sell. (*Id.* at 13–14). The state

presented a factual basis for the plea, and the judge then questioned Petitioner as follows:

> Q. All right. You were there that day. You were the one bringing the cocaine. The deal was brokered by Ms. Carter, okay, but you were the source of the cocaine. You then handed it off to her to conceal it when y'all realized something was up, right?
>
> A. (Witness nodded head.)
>
> Q. Okay. So, you were in possession of it, and you were there for the purpose of selling it?
>
> A. Yes, sir.
>
> Q. That's why you were possessing that dope on that occasion, right?
>
> A. Yes, sir.
>
> Q. Do you have any doubt that it was over 26 grams?
>
> A. No, sir.
>
> Q. Okay. All right. So, you see how what you did fits the elements of the crime?
>
> A. Yes, sir.
>
> Q. Okay. All right. Have you and your attorneys discussed privately, before today, the definitions of possession for sale or resale and possession for delivery of a Schedule II controlled substance?
>
> A. Yes, sir.
>
> Q. Okay. Have you and your attorneys discussed privately, before today, the proof that the State of Tennessee says they have against you in these cases?
>
> A. Yes, sir.
>
> Q. And have you and the Public Defender, I mean, have you and your attorneys discussed privately, before today, the punishment you might face if you went to trial and were convicted of one or both of these two charges against you?

A.    Yes, sir.

(*Id.* at 17–19). The judge also asked Petitioner if anyone threatened him "in any way to get [him] to take the deal," and Petitioner responded "No, sir." (*Id.* at 23). The judge then accepted Petitioner's guilty plea after finding that there was a factual basis for the plea, that Petitioner was competent to enter the plea, and that Petitioner entering the plea knowingly, voluntarily, and understandingly. (*Id.* at 25–26).

On September 21, 2015, the Marshall County Circuit Court received Petitioner's *pro se* state post-conviction petition. (Doc. No. 11-1 at 3–22). Petitioner asserted the following claims in the *pro se* petition: (1) his guilty plea was involuntary because it was induced by original counsel Debbie Zimmerle's statement that, if he did not plead guilty, he would be "faced with an all[-]white jury . . . And they are going to hang you"; (2) his counsel were ineffective in their investigation and preparation for trial; (3) his counsel were ineffective in their preparation "to present mitigating factors at sentencing hearing"; (4) his counsel were ineffective during plea negotiations; and (5) his conviction was unconstitutional due to the cumulative effect of the errors. (*Id.* at 15–20). The court appointed attorney Wesley Hall, IV ("post-conviction counsel") to represent Petitioner. (*Id.* at 56–57).

The court held an evidentiary hearing on March 11, 2016,[1] at which post-conviction counsel stated that he would focus on Zimmerle's alleged statement to Petitioner about the consequences of failing to plead guilty; specifically, whether the statement "fell below the objective standard of reasonableness," and undermined Petitioner's ability to "make an intelligent

---

[1] An order setting the evidentiary hearing reflects that Petitioner's *pro se* post-conviction petition "was amended by appointed counsel" (Doc. No. 11-1 at 58), but there is not a separate document styled as an amended post-conviction petition in the technical record filed by the Respondent. Further, the Memorandum Opinion ruling on the post-conviction petition does not refer to any amended petition. (*See id.* at 73–80). Accordingly, the Court infers that Petitioner's initial *pro se* post-conviction petition was the operative petition in the Marshall County Circuit Court.

decision regarding a plea offer." (Doc. No. 11-2 at 5). The Tennessee Court of Criminal Appeals

("TCCA") summarized the hearing testimony as follows:

> Original counsel [Debbie Zimmerle] testified that she was appointed to represent the Petitioner. Original counsel recalled discussing the facts of the case with the Petitioner, reviewing the discovery materials with him, and discussing with him the fact that he had enough prior convictions to qualify as a career offender. Original counsel advised the Petitioner that he faced a minimum sentence of thirty years to be served at sixty percent if convicted at trial. Original counsel testified that the Petitioner understood and wanted to go forward with a jury trial.
>
> Original counsel admitted that during these initial discussions, she spoke to the Petitioner about the possible composition of the jury, the demographics of Marshall County, and that, in her opinion, Marshall County was "a particularly conservative jurisdiction." Original counsel denied that she told the Petitioner that "he was going to get an all-white jury." She also denied that she told the Petitioner that the jury would "hang" him, stating that she did not "think [she] would use a term like that . . . [e]ven figuratively." Original counsel testified that after her discussion with the Petitioner about the possible composition of the jury, "he still chose to go forward with a jury trial."
>
> As the trial date neared, the Petitioner's family hired a different attorney to represent him. Due to the closeness of the scheduled trial date, the trial court ordered original counsel to continue to represent the Petitioner and to assist successor counsel [Brock Parks] in preparing for trial. Original and successor counsel then received supplemental discovery from the State. The supplemental discovery included recordings of phone calls the Petitioner had made from jail. Both original and successor counsel reviewed the recordings and discussed them with the Petitioner.
>
> Original counsel believed that the recordings were "very incriminating." Original counsel recalled that the recordings contained "an admission" by the Petitioner that was "pretty close to a confession." After reviewing the recordings, the Petitioner wanted to reopen plea negotiations. Original counsel testified that "it was not until [they] received [the] supplemental discovery that [the Petitioner] chose to enter the plea." Given the nature of the supplemental discovery, the trial court broke with its normal policy and allowed the Petitioner to enter a guilty plea a few days before the scheduled trial date.
>
> Successor counsel recalled that the Petitioner raised "the issue of the jury and jury makeup" and that they had "a discussion about just juries in general." However, successor counsel did not recall the Petitioner's ever stating to him that original counsel had "made the statement that he'd be tried by an all-white jury." Successor counsel testified that had the Petitioner made such a claim he would have, "[a]t a minimum," spoken to original counsel about it. Furthermore, successor counsel

testified that the Petitioner wanted to proceed to trial even after their discussion about juries.

Successor counsel testified that it was only after they had received and reviewed the supplemental discovery that the Petitioner decided to plead guilty. Successor counsel agreed with original counsel's assessment of the recordings. Successor counsel testified that the recordings were "a hurdle too high to overcome given the risk involved." Successor counsel negotiated the plea agreement with the State and was able to get the State to reduce its original offer of a thirty-year sentence to be served at sixty percent to a sentence of twenty-five years to be served at forty-five percent. Successor counsel testified that he was not able to attend the plea submission hearing, but that he reviewed the plea agreement with the Petitioner before the hearing.

The Petitioner claimed that his family hired successor counsel because original counsel urged him to accept the plea offer of twenty-five years. The Petitioner further claimed that he did not want to accept the plea agreement because he "wasn't in possession of the drugs." Contrary to the testimony of original and successor counsel, the Petitioner testified that he accepted the plea offer after original counsel told him "it was going to be an all-white jury" and that he "was going to be found guilty if [he] went to trial." The Petitioner denied that he pled guilty because of the recordings of his jail phone calls. However, the Petitioner admitted that original counsel's alleged statement about the possible jury composition was not the only reason that he pled guilty.

The Petitioner claimed that he told successor counsel about the "all-white jury" comment but that successor counsel "never responded on it." The Petitioner admitted that he told the trial court during the plea submission hearing that he was satisfied with the performance of both original and successor counsel. The Petitioner also admitted that he told the trial court that no one had threatened him into pleading guilty. The Petitioner claimed that he did not tell the trial court about original counsel's alleged threat because "it was [a] no-win situation."

*Cross v. State of Tennessee*, No. M2016–01578–CCA–R3–PC, 2017 WL 2782200, at *1–2 (Tenn. Crim. App. June 27, 2017).

On June 21, 2016, before ruling on the post-conviction petition, the Marshall County Circuit Court received Petitioner's *pro se* "Motion to Reconsider Post Conviction." (Doc. No. 11-1 at 64–70). Along with the *pro se* motion, Petitioner submitted a handwritten, signed, and notarized statement from co-defendant Laura Carter, stating: "I claim the ounce as mine, I'm doing time for it. It was on <u>me</u> and I'm writing you this to let you know I'm the guilty on fascilitation

possession [sic]. You not guilty on having an ounce—I am. This is my statement." (Doc. No. 11-1 at 71 (emphasis in original)). Carter's statement was dated February 17, 2016. (Doc. No. 11-1 at 71). Relying on this statement, Petitioner argued that his guilty plea was not knowing and voluntary, and that counsel were ineffective for allowing him to enter the plea agreement. (Doc. No. 11-1 at 65–69).

On June 30, 2016, the court denied Petitioner's state post-conviction petition. (Doc. No. 11-1 at 81). The TCCA summarized the trial court's ruling as follows:

> [T]he post-conviction court accredited the testimony of original and successor counsel over the Petitioner's testimony. The post-conviction court found that original counsel never made the threatening statements claimed by the Petitioner. Furthermore, the post-conviction court concluded that the Petitioner had failed to show that he pled guilty because of the alleged statements. The post-conviction court found that the Petitioner chose to accept the plea agreement after he received the incriminating recordings of his jail phone calls.

*Cross*, 2017 WL 2782200, at *1–2.

On July 8, 2016, the trial court dismissed Petitioner's *pro se* motion to reconsider because it did not demonstrate any of the three grounds[2] necessary to "reopen[] the evidence at the evidentiary hearing on a petition for post-conviction relief." (Doc. No. 1 at 14).[3] On July 29, 2016, Petitioner filed a Notice of Appeal. (Doc. No. 11-1 at 82–83). In a letter from his post-conviction counsel to Petitioner dated August 1, 2016, his post-conviction counsel stated, "I have filed your

---

[2] Under Tenn. Code Ann. § 40-30-117(a), a motion to reopen a post-conviction proceeding is "only available when the petitioner can establish by clear and convincing evidence that either (1) an appellate court has made a final ruling recognizing a new constitutional right that requires retroactive application; (2) new scientific evidence has come to light that establishes the petitioner is 'actually innocent of the offense or offenses for which the petitioner was convicted;' or (3) the petitioner's sentence was enhanced due to a previous conviction which was later found to be invalid." *Keen v. State of Tennessee*, 398 S.W.3d 594, 607 (Tenn. 2012) (quoting Tenn. Code Ann. § 40-30-117(a)(2)). "The petitioner must assert a sufficient factual basis for his claim that, if taken as true, would establish that he is entitled to relief." *Wren v. State of Tennessee*, No. W2017-00500-CCA-R3-PC, 2017 WL 4331054, at *2 (Tenn. Crim. App. Sept. 28, 2017) (citing Tenn. Code Ann. § 40-30-117(a)(4), (b)).

[3] The order dismissing Petitioner's *pro se* motion to reconsider is not in the technical record filed by the Respondent, but Petitioner attached it to the *pro se* habeas corpus petition in this Court. The technical record does, however, include an order setting a hearing on Petitioner's *pro se* motion to reconsider for July 8, 2016. (Doc. No. 11-1 at 72). The date and subject matter of this scheduling order is consistent with the order attached to the habeas petition.

Notice of Appeal . . . . We will aver that the trial court erred in not reopening your petition or in not reconsidering new proof in your post-conviction petition." (Doc. No. 1 at 15).

On June 27, 2017, the TCCA affirmed the denial of Petitioner's state post-conviction petition. (Doc. No. 11-6 at 1–3); *Cross*, 2017 WL 2782200. In doing so, the TCCA stated that the "gravamen" of Petitioner's post-conviction petition "was that the Petitioner had been 'terrorized' into pleading guilty when one of his trial attorneys threatened him by stating that he would face 'an all[-]white jury' that would 'hang' him if he did not accept the State's plea offer." *Id.* at *1. The TCCA recognized that "[t]he petition raised other grounds for post-conviction relief," but noted that this ground was "the main issue addressed at the post-conviction hearing and the only issue raised on appeal. Additionally, the Petitioner's post-conviction counsel at the post-conviction hearing and on appeal couched this issue as one of ineffective assistance of counsel, unlike the pro se petition." *Id.* at *1 n.1. Ultimately, the TCCA held that "[t]here [was] no proof in the record before us that would preponderate against" the post-conviction court's decision to credit "the testimony of original and successor counsel that the statements alleged in the petition were never made." *Id.* at *3. "Furthermore," the TCCA held, "the evidence at the post-conviction hearing established that the Petitioner chose to plead guilty after reviewing the State's supplemental discovery." *Id.* Petitioner did not file an application for permission to appeal the denial of his post-conviction petition in the Tennessee Supreme Court. (Doc. No. 1 at 4).

On July 17, 2017, this Court received Petitioner's *pro se* habeas corpus petition under 28 U.S.C. § 2254. (Doc. No. 1). On October 16, 2017, Respondent filed an Answer, arguing that Petitioner's claims are either procedurally defaulted or not cognizable, and that Petitioner requests relief that is not available in federal habeas corpus proceedings. (Doc. No. 12 at 12–17).

On December 12, 2017, the Court received Petitioner's Motion for Leave to File an Amended Petition (Doc. No. 14), with an attached Amended Petition for the Great Writ of Habeas Corpus Relief and Memorandum of Law (Doc. No. 14-1). Petitioner seeks to add a range of claims for ineffective assistance of counsel—at trial, on post-conviction initial review, and on post-conviction appeal. (Doc. No. 14 at 1–2). The Respondent filed a response in opposition, arguing that amendment would be futile because Petitioner's proposed claims are either procedurally defaulted or without merit. (Doc. No. 15 at 3).

## II. STANDARD OF REVIEW

Rule 15 of the Federal Rules of Civil Procedure governs the amendment of habeas corpus petitions in federal court. *Mayle v. Fenix*, 545 U.S. 644, 655 (2005). Under Rule 15(a)(1), a party may "amend its pleading once as a matter of course" within either 21 days of serving it, or 21 days after the opposing party files a response or motion. "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Where, as here, the opposing party does not give written consent, district courts should "freely give leave when justice so requires." *Id.* In determining whether justice requires the court to grant leave to amend a habeas petition, "courts consider several factors, including 'undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment.'" *Oleson v. United States*, 27 F. App'x 566, 569 (6th Cir. 2001) (quoting *Coe v. Bell*, 161 F.3d 320, 341 (6th Cir. 1998)).

## III. ANALYSIS

Respondent argues that Petitioner's motion to amend raises claims that are futile because they are procedurally defaulted and without merit. (Doc. No. 15 at 3). To obtain relief through a

habeas corpus petition, a state prisoner generally must exhaust all available state remedies. 28 U.S.C. § 2254(b); *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). The exhaustion requirement "is satisfied 'when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims.'" *Kelly v. Lazaroff*, 846 F.3d 819, 827 (6th Cir. 2017) (quoting *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990)). As the Sixth Circuit has explained, this "requires that the same claim under the same theory be presented to the state courts before raising it in a federal habeas petition." *Wagner v. Smith*, 581 F.3d 410, 417 (6th Cir. 2009) (citations omitted). In Tennessee, a petitioner will "be deemed to have exhausted all available state remedies for that claim" when the claim is presented to the Tennessee Court of Criminal Appeals. *Adams v. Holland*, 330 F.3d 398, 402 (6th Cir. 2003) (quoting Tenn. Sup. Ct. R. 39).

Here, Petitioner has only exhausted one claim in the state courts—a claim for ineffective assistance of trial counsel based on original counsel Debbie Zimmerle's alleged statement that, if he did not plead guilty, he would face an all-white jury that would hang him. As the TCCA explained in affirming the denial of Petitioner's state post-conviction petition, this alleged statement was the "only issue raised on appeal," and Petitioner's post-conviction counsel "couched this issue as one of ineffective assistance of counsel, unlike the pro se petition." *Cross*, 2017 WL 2782200, at *1 n.1. This description is supported by the Petitioner's post-conviction appellate brief, which argues only that Petitioner's trial counsel was ineffective in "guiding him with regard to entering a plea of guilty" because he "would have followed through with his trial had it not been for the fear elicited by the racial composition commentary from" Zimmerle. (Doc. No. 11-4 at 13–14). The TCCA affirmed the trial court's denial of this claim, holding that there was not any "proof in the record . . . that would preponderate against" the trial court's finding that "the statements

alleged in the petition were never made." *Cross*, 2017 WL 2782200, at *3. The TCCA also found

that "the evidence at the post-conviction hearing established that the Petitioner chose to plead

guilty after reviewing the State's supplemental discovery." *Id.* Accordingly, this is the only claim

that has been adequately exhausted.

A claim may be "technically exhausted, yet procedurally defaulted" where "a petitioner

fails to present a claim in state court, but that remedy is no longer available to him." *Atkins v.*

*Holloway*, 792 F.3d 654, 657 (6th Cir. 2015) (citing *Jones v. Bagley*, 696 F.3d 475, 483–84 (6th

Cir. 2012)). Because Petitioner may not file "more than one (1) petition for post-conviction relief

. . . attacking a single judgment," Tenn. Code Ann. § 40-30-102(c), the proposed claims in his

motion to amend are procedurally defaulted.

Petitioner's proposed claims all relate to ineffective assistance of counsel, and they are

generally based on the same premise—that he did not possess the cocaine. Petitioner seeks to add

claims that his trial counsel was ineffective in four ways: first, by failing to advise him that "his

mere presence as a passenger in a car from which the police recover contraband . . . does not

establish possession"; second, by coercing Petitioner to plead guilty when they should have known

that the cocaine "was in the sole possession of Laura Carter"; third, by "threaten[ing] him" that he

would "get 30 years at 60%" if he went to trial; and fourth, by failing to present Carter's February

2017 statement to the trial court before he pleaded guilty in October 2014. (Doc. No. 14 at 1–2;

Doc. No. 14-1 at 2). Petitioner also seeks to add claims that post-conviction counsel was

ineffective, both at the post-conviction trial court and on post-conviction appeal, for failing to

argue that trial counsel were ineffective for coercing Petitioner to plead guilty when they should

have known Carter solely possessed the cocaine. (Doc. No. 14 at 1). As to his post-conviction

appeal, Petitioner asserts that counsel was ineffective in two additional ways: first, by failing to

11

present the claim that his plea was not knowing and voluntary; and second, by failing to present evidence of Carter's February 2017 statement. (Doc. No. 14-1 at 2).

In order to overcome the procedural default of Petitioner's proposed claims, he must "establish 'cause' and 'prejudice,' or a 'manifest miscarriage of justice.'" *Middlebrooks v. Carpenter*, 843 F.3d 1127, 1134 (6th Cir. 2016) (citing *Sutton v. Carpenter*, 745 F.3d 787, 790–91 (6th Cir. 2014)). "Habeas petitioners cannot rely on conclusory assertions of cause and prejudice to overcome procedural default; they must present affirmative evidence or argument as to the precise cause and prejudice produced." *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Tinsley v. Million*, 399 F.3d 796, 806 (6th Cir. 2005)).

Petitioner argues that his post-conviction counsel's ineffectiveness is cause to excuse the procedural default of these claims. (Doc. No. 14-1 at 4–5). Typically, "attorney error committed in the course of state postconviction proceedings . . . cannot supply cause to excuse a procedural default that occurs in those proceedings." *Davila v. Davis*, 137 S. Ct. 2058, 2065 (2017) (discussing *Coleman v. Thompson*, 501 U.S. 722, 755 (1991)). In *Martinez v. Ryan*, however, the Supreme Court announced a narrow exception to this rule in circumstances "where state law requires prisoners to raise claims of ineffective assistance of trial counsel 'in an initial-review collateral proceeding,' rather than on direct appeal." *Id.* (discussing *Martinez v. Ryan*, 566 U.S. 1, 16–17 (2012)). "[I]n those situations, 'a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if' the default results from the ineffective assistance of the prisoner's counsel in the collateral proceeding." *Id.* (quoting *Martinez*, 566 U.S. at 17).

Thus, although Petitioner seeks to use the narrow exception established in *Martinez* to demonstrate cause for the procedural default of all of his claims, he may only do so for his proposed

claims of ineffective assistance of <u>trial</u> counsel. *See Hodges v. Colson*, 727 F.3d 517, 530–31 (6th Cir. 2013) ("Inadequate assistance of counsel at initial review collateral proceedings may establish cause for a procedural default of a claim of ineffective assistance *at trial*.") (emphasis in original); *see also Coleman*, 501 U.S. at 752 ("There is no constitutional right to an attorney in state post-conviction proceedings."). "Moreover, 28 U.S.C. § 2254(i) bars a claim of ineffective assistance of post-conviction counsel as a separate ground for relief . . . ." *Id.* at 531 (citing *Martinez*, 566 U.S. at 17). Accordingly, amendment of the Petition to add claims for ineffective assistance of post-conviction counsel, at either the post-conviction trial court or on post-conviction appeal, would be futile. Petitioner's request to do so should therefore be denied.

To determine whether Petitioner has demonstrated cause to overcome the procedural default of his remaining proposed claims for ineffective assistance of trial counsel ("IATC") under *Martinez*, the Court considers "(1) whether state post-conviction counsel was ineffective; and (2) whether [Petitioner's] claims of ineffective assistance of counsel were 'substantial.'" *Atkins*, 792 F.3d at 660 (citations omitted). If Petitioner demonstrates "cause," then the Court must consider "whether [he] can demonstrate prejudice." *Id.* And if Petitioner has established both "cause" and "prejudice," only then would the Court "evaluate [his] claims on the merits." *Id.* (citations omitted). Here, Petitioner fails to demonstrate that his proposed IATC claims are "substantial," so he has not established cause to overcome their procedural default.

"A substantial claim is one that has some merit and is debatable among jurists of reason." *Abdur'Rahman v. Carpenter*, 805 F.3d 710, 713 (6th Cir. 2015) (citing *Martinez*, 566 U.S. at 14). "In the converse, a claim is insubstantial when 'it does not have any merit,' 'is wholly without factual support,' or when 'the attorney in the initial-review collateral proceeding did not perform

below constitutional standards.'" *Porter v. Genovese*, 676 F. App'x 428, 432 (6th Cir. 2017) (quoting *Martinez*, 566 U.S. at 15–16).

First, Petitioner asserts that trial counsel was ineffective for failing to advise him that "his mere presence as a passenger in a car from which the police recover contraband . . . does not establish possession." (Doc. No. 14 at 1). The premise that Petitioner's conviction is based on his "mere presence . . . in a car," however, is mistaken. At the plea acceptance hearing, the trial judge explained what the state must prove to convict Petitioner of possession with intent to sell 26 grams or more of cocaine. Among other things, the judge specifically advised Petitioner that the state had to prove he "knowingly possessed cocaine," and that the state could do so by proving either actual or constructive possession. The state then presented a detailed factual basis for Petitioner's guilty plea, after which Petitioner confirmed that he brought the cocaine, that he had physical control of the cocaine prior to officers stopping the vehicle, and that he gave the cocaine to co-defendant Linda Carter and instructed her to conceal it when they were stopped. Accordingly, the state's factual basis for the plea and Petitioner's own testimony reflect that he had both actual and constructive possession of the cocaine. Petitioner should not, therefore, be permitted to amend the Petition to add a claim based on the premise that his conviction for possessing cocaine was based on his "mere presence as a passenger in a car from which the police recover contraband."

Second, Petitioner asserts that trial counsel was ineffective in coercing Petitioner to plead guilty when they should have known that the cocaine "was in the sole possession of Laura Carter." (Doc. No. 14 at 1). As explained in the preceding paragraph, however, the fact that officers recovered the cocaine from Carter, rather than the Petitioner, does not answer the question of whether Petitioner possessed it under Tennessee law. Indeed, Petitioner testified that he brought the cocaine and gave it to Carter to conceal when the officers initiated a stop of the vehicle. Based

on the evidence presented prior to Petitioner's pleading guilty, Petitioner's trial counsel did not have any reason to believe that Carter solely possessed the cocaine. Trial counsel, therefore, could not have coerced Petitioner to plead guilty despite that knowledge, and this potential claim is without merit.

Third, Petitioner asserts that trial counsel was ineffective in "threaten[ing] him" that he would "get 30 years at 60%" if he went to trial. (Doc. No. 14-1 at 2). This claim is also without merit. At the evidentiary hearing on Petitioner's state post-conviction petition, original counsel Debbie Zimmerle testified that she "advised the Petitioner that he faced a minimum sentence of thirty years to be served at sixty percent if convicted at trial." *Cross*, 2017 WL 2782200, at *1. Petitioner does not dispute that this advice was an accurate reflection of his sentence if he was convicted at trial,[4] and there is not any evidence that original counsel presented this advice in a manner that was threatening. Accordingly, Petitioner should not be permitted to amend the Petition to add this claim.

Fourth, Petitioner asserts that trial counsel was ineffective in failing to present Linda Carter's February 2017 statement to the trial court before he pleaded guilty in October 2014. (Doc. No. 14 at 2). This claim has no basis in fact—counsel could not have presented the trial court with a statement years before that statement was made.

Finally, Petitioner argues that Carter's statement claiming responsibility for possessing the cocaine is "newly discovered evidence" establishing his "actual innocence." (Doc. No. 14-1 at 3). While actual innocence is not an independent basis for habeas relief, "a petitioner's showing of a

---

[4] Both original counsel and Petitioner testified at the evidentiary hearing on Petitioner's state post-conviction petition that he was a career offender. (Doc. No. 11-2 at 9, 41). Petitioner's indictment charged him with two Class B felonies. (Doc. No. 11-1 at 39–42); Tenn. Code Ann. § 39-17-417(c)(1). Under Tenn. Code Ann. § 40-35-108(c), a career offender "shall receive the maximum sentence within the applicable Range III." The Range III sentence for a Class B felony is "not less than twenty (20) nor more than thirty (30) years," Tenn. Code Ann. § 40-35-112(c)(2), and the release eligibility for a career offender "shall occur after service of sixty percent (60%) of the actual sentence imposed less sentence credits earned and retained by the defendant," Tenn. Code Ann. § 40-35-501(f).

credible claim of innocence allows him to skirt a procedural defect in his claim so that a federal court may address his allegation of constitutional error." *Davis v. Bradshaw*, No. 17-3262, 2018 WL 3913103, at *8 (6th Cir. Aug. 16, 2018) (citing *Schlup v. Delo*, 513 U.S. 298, 315 (1995)). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Souter v. Jones*, 395 F.3d 577, 590 (6th Cir. 2005) (quoting *Schlup*, 513 U.S. at 324). A petitioner must establish "that 'it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt.'" *Stojetz v. Ishee*, 890 F.3d 175, 208 (6th Cir. 2018) (quoting *Schlup*, 513 U.S. at 327). This "actual innocence exception should 'remain rare' and 'only be applied in the extraordinary case.'" *Souter*, 395 F.3d at 590 (quoting *Schlup*, 513 U.S. at 321) (internal quotation marks omitted).

Here, Carter's statement does not establish Petitioner's actual innocence. Her statement plainly contradicts Petitioner's plea hearing testimony, which reflected that Petitioner brought the cocaine, and only gave it to Carter to hide after officers initiated a stop of the vehicle. Plea hearing testimony "'constitute[s] a formidable barrier in any subsequent collateral proceedings' because '[s]olemn declarations in open court carry a strong presumption of verity.'" *Calvey v. Burt*, No. 17-1926, 2018 WL 2015779, at *3 (6th Cir. Apr. 30, 2018) (quoting *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977)). Additionally, the Court "may consider how the timing of [Carter's statement] and the likely credibility of the affiant[ ] bear on the probable reliability of" the statement. *Benning v. Warden, Lebanon Corr. Inst.*, 345 F. App'x 149, 161 (6th Cir. 2009) (quoting *Schlup*, 513 U.S at 332). It is well-established that one co-defendant's statement that exculpates another co-defendant may be "highly suspect" where, as here, both defendants had already "been convicted and were covered by double jeopardy." *In re Byrd*, 269 F.3d 585, 605–06

(6th Cir. 2001) (collecting cases). Post-conviction statements like Carter's "are inherently suspect because codefendants may try to assume full responsibility for the crime without any adverse consequences." *Allen v. Yukins*, 366 F.3d 396, 605 (6th Cir. 2004). In this case, Carter's statement is simply not sufficiently credible to overcome the extraordinarily high standard Petitioner must meet for the Court to excuse the procedural default of his proposed claims due to actual innocence.

## IV. RECOMMENDATION

For these reasons, the Magistrate Judge **RECOMMENDS** that the Petitioner's Motion for Leave to File an Amended Petition (Doc. No. 14) be **DENIED**.

The parties have fourteen (14) days after being served with a copy of this Report and Recommendation ("R&R") to serve and file written objections to the findings and recommendation proposed herein. A party shall respond to the objecting party's objections to this R&R within fourteen (14) days after being served with a copy thereof. Failure to file specific objections within fourteen (14) days of receipt of this R&R may constitute a waiver of further appeal. 28 U.S.C. § 636(b)(1); Rule 8(b) of Rules Governing § 2254 Cases; *Thomas v. Arn*, 474 U.S. 140, 155 (1985).

**ENTERED** this 30th day of  August , 2018.

Joe B. Brown
United States Magistrate Judge