UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

SHAUN R. CROSS,                    )
                                   )
                Petitioner,        )
                                   )
v.                                 )          No. 1:17-00066
                                   )          Judge Campbell/Brown
RANDY LEE, WARDEN,                 )
                                   )
                Respondent.        )

To:  The Honorable William L. Campbell, Jr., United States District Judge.

## REPORT AND RECOMMENDATION

For the reasons explained below, the Magistrate Judge **RECOMMENDS** that: **1)** no evidentiary hearing be held in this matter; **2)** petitioner's petition for *habeas corpus* relief under to 28 U.S.C. § 2254 be **DENIED**; **3)** this action be **DISMISSED WITH PREJUDICE**; **4)** acceptance and adoption of this R&R constitute the **FINAL JUDGMENT** in this action; **5)** should petitioner file a notice of appeal, such notice **BE DOCKETED** as both a notice of appeal and application for a certificate of appealability (COA) which **SHOULD NOT ISSUE**.

## I.  INTRODUCTION
## AND
## BACKGROUND

Petitioner, proceeding *pro se* and *informa pauperis*, is an inmate in the Trousdale Turner Correctional Center in Hartsville, Tennessee.  He brought this action on July 17, 2017 seeking federal *habeas corpus* relief under 28 U.S.C. § 2254 asserting the following grounds for relief: 1) representation of appointed counsel was deficient; 2) his guilty plea was not knowing and voluntary; 3) he is innocent of the offense to which he pleaded guilty.  (Doc. 1)

The undersigned entered an R&R on August 30, 2018 recommending that petitioner's motion for leave to amend his petition be denied.  (Doc. 19)  The facts and procedural background in that

R&R are incorporated herein by reference. (Doc. 19, ¶ I, pp. 1-9 of 17)[1] The District Judge accepted and adopted the R&R on September 19, 2018. (Doc. 20) This matter is now properly before the court.

## II. ANALYSIS

Petitions for federal *habeas corpus* relief filed after April 24, 1996 are subject to the Antiterrorism and Effective Death Penalty Act (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (1996). *See Hoffner v. Bradshaw*, 622 F.3d 487, 494 (6th Cir. 2010)(citing *Lindh v. Murphy*, 521 U.S. 320, 326-27 (1977)). Title 28 U.S.C. § 2254, as amended by the AEDPA, provides the following with respect to granting a writ of *habeas corpus* to prisoners who are in custody pursuant to a state court judgment:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The "unreasonable application" of clearly established federal law differs from an "incorrect application." *Williams v. Taylor*, 529 U.S. 362, 365 (2000). Under the former, "a federal *habeas corpus* court may grant relief if the state court identifies the governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's

---

[1] The page numbers referred to herein are to the page numbers created by the court's CMECF system that appear in the lower right corner of each docket entry adjacent to the "PageID #."

case." *Williams*, 529 U.S. at 365. The latter clause is satisfied when a state court "arrives at a conclusion opposite that reached by [the Supreme] Court on a question of law or . . . decides a case differently than the [Supreme] Court . . . on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 364-65. Where state courts have made factual determinations regarding issues presented for federal *habeas* review, such determinations are presumed to be correct, and the *habeas* petitioner has the burden of rebutting that presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see Miller-el v. Cockrell*, 537 U.S. 322, 324 (2003); *see Shimel v. Warren*, 838 F.3d 685, 697 (6th Cir. 2016)(citing 28 U.S.C. § 2254(e)(1)). The purpose of federal *habeas* review under the AEDPA is to "'prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under the law." *Carter v. Bogan*, 900 F.3d 754, 767 (6th Cir. 2018)(quoting *Bell v. Cone*, 535 U.S. 685, 693 (2002)).

## A. Petitioner's Ineffective Assistance of Counsel Claims

Petitioner refers three times in his petition to alleged ineffective assistance of counsel. First, petitioner asserts vaguely that he "set out instances where his sixth amendment right to 'effective counsel' was violated," adding that the post-conviction court "err[ed] in it[]s determination that the conduct of counsel was within the standard demanded of competent counsel." (Doc. 1, ¶¶ 12), 19), pp. 2-3 of 17) Although he does not say so specifically, petitioner is referring to "instances" raised on post-conviction where he asserted that appointed defense counsel, attorney Debbie Zimmerle, allegedly was deficient in her representation. (Doc. 1, ¶¶ 11)-12), p. 2 of 17) Second, petitioner asserts that "his plea was not knowingly or voluntarily entered . . . ." (Doc. 1, ¶ 25), p. 5 of 17) Here, petitioner refers to attorney Zimmerle's representation because she allegedly coerced him into entering a guilty plea. Third, petitioner asserts that, had his co-defendant – Laura Carter – "been

Case 1:17-cv-00066    Document 26    Filed 04/22/19    Page 3 of 24 PageID #: 340

honest to begin[] with,"[2] he would "never have entered into a plea agreement" and, "had counsel performed as he was required to," that "would have changed the outcome of his situation."  (Doc. 1, ¶ 20), p. 4 of 17)  Petitioner refers here to attorney Wesley Hall – appointed post-conviction counsel – and his alleged failure to bring Carter's affidavit – discussed at n. 2 below – before the post-conviction court or to raise it on appeal from the judgment of the post-conviction court.  (Doc. 1, ¶¶ 18), 20), 22), pp. 2-4 of 17)

The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel.  *See Strickland v. Washington*, 466 U.S. 668, 686-87 (1984); *see Monea v. United States*, 914 F.3d 414, 419 (6th Cir. 2019).  Petitioners who allege ineffective assistance of counsel must establish two things.  First, they must show that the attorney's performance fell below "prevailing professional norms."  *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986); *see Monea*, 914 F.3d at 419.  Second, they must show that the attorney's alleged deficient representation prejudiced their case.  *Kimmelman*, 477 U.S. at 381; *see Monea*, 914 F.3d at 419.  When an ineffective assistance claim arises under the AEDPA, federal courts apply a deferential standard of review – the court gives deference to both counsel's performance and the state court's determination that counsel's performance was reasonable.  *See Cullen v. Pinholster*, 563 U.S. 170, 196 (2011); *Hand v. Houk*, 871 F.3d 390, 413 (6th Cir. 2017), *cert denied*, 138 S.Ct. 1593 (2018).

### 1. "Instances" of Attorney Zimmerle's Alleged Deficient Representation

Turning to petitioner's first ineffective assistance claim, the petition provides no factual

---

[2] Carter provided petitioner with an affidavit while the latter was pursuing his post-conviction remedies.  Carter states in her affidavit that the possession charge against her was dismissed, and that she was permitted to plead guilty to a charge of facilitation for which she had been sentenced to 15 years at 45 percent.  (Doc. 1, p. 12 of 17)  Carter then wrote: "I claim the ounce as mine, I'm doing time for it.  It was on me and I'm writing this to let you know I'm . . . guilty o[f] facilitation possession . . .  You not guilty of having an ounce – I am."  (Spelling and grammatical errors corrected)  Carter signed the affidavit on Feburary 17, 2016, but it was not notarized until May 7, 2018.

4

allegations to support petitioner's claim that attorney Zimmerle's representation was deficient prior to or at the time petitioner entered his plea agreement, nor has petitioner made any effort to identify the "instances" of alleged deficient representation to which he refers.

The law is well established that *pro se* actions are held to less stringent standards than those brought by an attorney. *See Boag v. MacDougall*, 454 U.S. 364, 365 (1982); *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). However, the law is equally well established that the federal courts are not willing to "abrogate basic pleading essentials'" in *pro se* actions, *see Clark v. Johnston*, 413 Fed.Appx. 804, 817 (6th Cir. 2011), and that the doctrine of "[l]iberal construction does not require a court to conjure allegations on a litigant's behalf," *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004). Moreover, where, as here, no effort is made to develop any legal argument, such claims are waived. *See United States v. Stewart*, 628 F.3d 246, 256 (6th Cir. 2010)("'Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.'"); *see also Spirko v. Mitchell*, 368 F.3d 603, 612 (6th Cir. 2004); *United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996). Because petitioner has made no effort to develop any legal argument, his first ineffective assistance claim against attorney Zimmerle is waived.

Certificate of Appealability: For a COA to issue when *habeas* relief is denied on procedural grounds, a *habeas* petitioner must show "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right **and** that jurists of reasons would find it debatable whether the district court was correct in its procedural ruling." *Gonzalez v. Thaler*, 565 U.S. 134, 140-41 (2012)(quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000))(bold added). Jurists of reason would not find the court's waiver determination on this issue debatable. Therefore,

5

a COA should not issue as to this claim.

### 2. Attorney Zimmerle's Alleged Deficient Representation in Connection With Petitioner's Guilty Plea

Turning to the second ineffective assistance claim against attorney Zimmerle, the petition is again bereft of any factual allegations. For the reasons explained in paragraph II.A.1 above, this claim also is waived. That said, the undersigned is mindful that he wrote the following in his August 30th R&R: "Petitioner has only exhausted one claim in the state courts – a claim for ineffective assistance of trial counsel based on [appointed defense] counsel Debbie Zimmerle's alleged statement that, if [petitioner] did not plead guilty, he would face an all-white jury that would hang him." (Doc. 19, p. 10 of 17) Because petitioner has exhausted this claim, the undersigned will address it on the merits anyway.

The law is firmly established that criminal "[d]efendants have a Sixth Amendment right to counsel . . . that extends to the plea-bargaining process." *Lafler v. Cooper*, 566 U.S. 156, 162 (2012)(citing *Missouri v. Frye*, 566 U.S. 134 (2012); *Padilla v. Kentucky*, 559 U.S. 356 (2010); *Hill v. Lockhart*, 474 U.S. 52 (1985)). "'[T]he two-part *Strickland* . . . test applies to challenges of guilty pleas based on ineffective assistance of counsel.'" *Lafler*, 566 U.S. at 163 (quoting *Hill*, 474 U.S. at 58). In the guilty-plea context, a *habeas* petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Lafler*, 566 U.S. at 163 (quoting *Hill*, 474 U.S. at 59). To satisfy the dictates of due process, guilty pleas "not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States,* 397 U.S. 742, 748 (1970); *see Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005). Courts evaluate the voluntariness of a guilty plea by analyzing whether the plea "[was] extracted by any sort of threats or violence, [or] obtained by any direct or implied promises, however slight, [or] by the

6

exertion of any improper influence.'"  *Brady*, 397 U.S. at 753; *see Clement v. Kelly*, 642 Fed.Appx. 498, 503 (6th Cir. 2016).   A state court's determination that a guilty plea was valid is a factual finding entitled to a presumption of correctness on federal *habeas* review, rebuttable only by clear and convincing evidence.  *See* 28 § U.S.C. 2254(e)(1); *see also Railey v. Webb*, 540 F.3d 393, 417 (6th Cir. 2008).  Where the transcript of the plea hearing shows that the guilty plea was voluntary and intelligent, a presumption of correctness attaches to the state-court findings of fact and to the judgment itself.  *See Carethers v. Wolfenbarger*, 407 Fed.Appx. 14, 17 (6th Cir. 2011).

Petitioner appeared at a plea acceptance hearing on Thursday October 2, 2014 before the Honorable F. Lee Russell.[3]  (Doc. 11-3, Ex. 1)  The following colloquy transpired between Judge Russell and petitioner pertaining to the latter's decision to enter a plea:

> Q.    I need to know that this plea is free and voluntary. So, I think I know the answer, but where did this deal come from?  Did it come from endless talking back and forth between General Barnard and your two attorneys? Did they go back and forth and try to work a deal?
>
> A.    Yes, sir.
>
> Q.    Been tying to do that for months, haven't they?
>
> A.    Yes, sir.
>
> Q.    Okay.  And you've been participating in that process through your attorneys; is that right?
>
> A.    Yes, sir.
>
> Q.    Okay.  Have you been promised anything other than what's been announced here in open court to get you to take the deal?

---

[3]  The record shows that attorney Brock Parks– who had been retained by petitioner's family shortly before trial – spoke with petitioner about the plea agreement the day before the plea acceptance hearing on Thursday, October 2, 2014.  (Doc. 11-3, pp. 5-6 of 32)  Trial was set for Monday, October 6, 2014.  (Doc. 11-3, pp. 19, 22 of 32)

7

|     |                                                                          |
| --- | ------------------------------------------------------------------------ |
| A.  | No, sir.                                                                 |
| Q.  | Okay. Has anybody threatened you in any way . . . to get you to take the deal? |
| A.  | No, sir.                                                                 |
| Q.  | I didn't really think so. Okay. So, is it a free and voluntary plea on your part? |
| A.  | Yes, sir.                                                                |
| Q.  | Okay. All right. Do you have any complaints about the way and manner in which your attorneys have represented you, either one of them? |
| A.  | No, sir.                                                                 |

(Doc. 11-3, pp. 23-24 of 32) Judge Russell entered the following on the record at the close of the hearing:

> I do find that he's competent to enter into his plea, that he[] . . . understands both the direct and relevant collateral consequences of his plea. That he's entering into his plea knowingly, voluntarily, and understandingly. And . . . there is a factual basis for it, so I'm going to accept it. And I'm not even going to ask you what took you so long.

(Doc. 11-3, pp. 25-26 of 32) Judgment entered the same day. (Doc. 11-3, p. 29 of 32)

Eleven-plus months after judgment entered, petitioner filed a petition for state post-conviction relief on September 21, 2015.[4] (Doc. 11-1, pp.3-22 of 84) Petitioner claimed, in relevant part, that he did not enter his guilty plea voluntarily because attorney Zimmerle threatened him: "[I]f you decide not to accept the guilty plea, then you'll be faced with an all white jury out of Chapel Hill, where 'crack' cocaine doesn't exist, [a]nd they are going to hang you!" (Doc. 11-1, p. 16 of

---

[4] The burden in a post-conviction proceeding is on the petitioner to prove his allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); *see Dellinger v. State*, 279 S.W.3d 282, 293-94 (Tenn. 2009).

8

84) Petitioner asserted that this alleged threat "scared . . . [and] . . . terrorized [him] to enter . . . an involuntary guilty plea." (Doc. 11-1, p. 16 of 84)

Petitioner's post-conviction hearing was held on March 11, 2016, before Judge Russell. (Doc. 11-2) Petitioner was represented at the hearing by attorney Hall. (Doc. 11-2, p. 1 of 63) Attorney Zimmerle, petitioner, and attorney Parks testified at the hearing.

Attorney Zimmerle testified as follows on direct examination: 1) she was appointed to represent petitioner "sometime around November of 2013" (Doc. 11-2, p. 8 of 63); 2) the original plea date had been "set for sometime in March" of 2014 for "all of the co-defendants" (Doc. 11-2, p. 8 of 63); 3) the decision was made to "set the matter for trial" the following October (Doc. 11-2, p. 8 of 63); 4) petitioner's "two co-defendants . . . had. . . implicated [him] as . . . the ring leader of the whole operation . . . ." (Doc. 11-2, p. 8 of 63); 5) she discussed the case with attorney Parks when he came on the case, including the incriminating statements petitioner's co-defendants had made, but it was "decided to move forward with setting the matter for trial" even though petitioner understood that he faced being sentenced as a "career offender" and that he could receive a sentence of 30 years at 60 percent (Doc. 11-2, pp. 8-9 of 63); 6) the defense "received . . . supplemental discovery . . . at the time [attorney] Parks came on board . . . that was going to be very incriminating" (Doc. 11-2, pp. 9-10 of 63); 7) attorney Parks discussed the supplemental discovery with petitioner (Doc. 11-2, pp. 9-10 of 63); 8) the supplemental discovery "caused [petitioner] to decide to go ahead and take the . . . original plea" (Doc. 11-2, p. 10 of 63); 9) "most of [petitioner's] previous charges had come out of Maury County" and not Marshall County, where he was charged, and they discussed what "a Marshall County jury might look like" compared to a Maury County Jury (Doc. 11-2, pp. 12-13 of 63); 10) she denied telling petitioner that he would face "an 'all-white jury from Chapel Hill,'" or that a Marshall County jury was going to "hang him" (Doc. 11-2, p. 13

9

of 63); 11) she had "been in jury trials . . . in Marshall County . . . seen the demographics," and her experience was that "you just don't get as many African-Americans or people of color in Marshall County as . . . in other districts" (Doc. 11-2, p. 14 of 63); 12) she felt that petitioner needed to "know what he[] . . . [was] . . . facing when . . . coming before a particular . . . audience" and that it would have "fall[en] below the standard if [she] were not to inform him in a particularly conservative jurisdiction that it [wa]s a particularly conservative jurisdiction" (Doc. 11-2, p. 15 of 63). Attorney Zimmerle concluded her testimony on direct by stating: "Knowing all of those things, he still chose to go forward with the jury trial . . . [a]nd we prepared for that. . . . [I]t was not until we received [the] supplemental discovery that he chose to enter the plea." (Doc. 11-2, p. 16 of 63)

Attorney Zimmerle gave the following testimony on cross-examination by Assistant District Attorney (ADA) Weakley Bernard: 1) she denied telling petitioner that he would get an all-white jury out of Chapel Hill, although she admitted discussing the possible makeup of the jury in Marshall County based on her experience there (Doc. 11-2, p. 17 of 63); 2) the supplemental discovery comprised "jailhouse recordings" of petitioner's telephone conversations, that petitioner had the opportunity to listen to the recordings, and "[i]t was after he listened to the recording[s]" that he decided to enter a guilty plea (Doc. 11-2, pp. 17-18 of 63): 3) "th[e] calls would have come in . . . [there] was a Bar opinion that . . . there was no way to keep th[em] out" (Doc. 11-2, pp. 18-19 of 63); 4) petitioner "g[ave] what some[] might consider an admission through those phone calls" (Doc. 11-2, p. 19 of 63); 5) attorney Parks went over the ramifications of the guilty plea with petitioner (Doc. 11-2, pp. 21-22 of 63).

Petitioner followed attorney Zimmerle and testified as follows on direct examination by attorney Hall: 1) attorney Zimmerle told him "it was going to be an all-white jury out of Chapel Hill, that cocaine doesn't exist in their world . . . .[and] [he] was going to be found guilty if [he] went to

trial" (Doc. 11-2, pp. 25-27 of 63); 2 he described attorney Zimmerle's alleged "terrorizing" in the following terms: "[I]t scared me. I didn't know what to do. It felt like it was a no-win situation . . . that scared me . . . It put me in a position where it was a win or lose situation." (Doc. 11-2, p. 27 of 63)

Petitioner testified as follows on cross-examination by ADA Bernard: 1) attorney Zimmerle told him in March 2014 that he was going to get an all-white jury from Chapel Hill (Doc. 11-2, pp. 34-35 of 63); 2) he told attorney Parks about attorney Zimmerle's alleged all-white-jury threat, but attorney Parks did not do anything (Doc. 1-2, pp. 35-36 of 63); 3) he was not concerned with what the state's witnesses were going to say if he went to trial, that the only "threat" to him was "an all-white jury out of Chapel Hill"(Doc. 11-2, p. 37 of 63); 4) the jailhouse phone recordings had nothing to do with his decision to plead guilty[5] (Doc. 11-2, p. 39 of 63). Petitioner concluded his testimony by: 5) admitting that he listened to the phone recordings before he entered his plea (Doc. 11-2, pp. 41-42 of 63); 6) admitting that he did not tell Judge Russell at the plea acceptance hearing that he had any problems with his attorneys when asked (Doc. 11-2, p. 42 of 63); 7) repeating his earlier testimony that attorney Parks did nothing when petitioner informed him of attorney Zimmerle's alleged all-white-jury threat (Doc. 11-2, p. 42 of 63); 8) admitting that he did not tell Judge Russell at the plea acceptance hearing that attorney Zimmerle allegedly threatened him when Judge Russell asked (Doc. 11-2, pp. 42-43 of 63); 9) admitting that he could have told Judge Russell that the drugs were not his, but that he elected not to (Doc. 11-2, p. 44 of 63).

Petitioner testified on redirect examination by attorney Hall that, although attorney Zimmerle did not threaten him directly, the alleged all-white-jury statement "scare[d] [him] into wondering

_____

[5] At this point, ADA Bernard adduced testimony from petitioner that impeached the latter's reputation for truthfulness based on his numerous prior criminal convictions dating back to 1993, including convictions for theft and criminal impersonation. (Doc. 11-2, pp. 40-41 of 63)

what would go on . . . if [he] went to trial," that it was the "topic of discussion that terrorized . . . and threatened [him]," and if that discussion had not taken place, he would have taken his case to trial. (Doc. 11-2, pp. 45-46 of 63)

Attorney Parks testified as follows on direct examination by ADA Bernard: 1) he examined the supplemental discovery, that the jailhouse recordings were harmful to the case, and characterized the tapes as "pretty close to an admission against interest" (Doc. 11-2, pp. 49-50 of 63); 2) he went over the recordings with petitioner personally, that they were clear and understandable, that there "was no dispute" it was petitioner's voice on the recordings, and that he explained to petitioner the calls were detrimental to his case (Doc. 11-2, pp. 50-51 of 63); 3) he did not recall petitioner bringing attorney Zimmerle's alleged all-white-jury threat to his attention, but he did recall during their first meeting that they discussed "the jury and jury makeup . . . [and] . . . ha[d] a discussion about juries in general . . . [b]ut the conversation was more about the jury process, and selection . . . ." (Doc. 11-2, pp. 52-53 of 63); 4) if petitioner had brought attorney Zimmerle's alleged all-white-jury threat to his attention, "[a]t a minimum, [he] would have had a discussion with Ms. Zimmerle. . . to make sure that [he] understood the context of the comments . . . [a]nd certainly, [they] didn't have that conversation" (Doc. 11-2, pp. 53-54 of 63).

Attorney Parks testified on cross-examination that he was not a party to the alleged all-white-jury conversation, and that he did not know petitioner's mental process in deciding to plead guilty. (Doc. 11-2, p. 54 of 63)

Attorney Parks testified as follows on redirect examination:1) "when [he] first got in the case, we were . . . headed for trial . . . [t]he expectation was that we would try the case" (Doc. 11-2, pp. 54-55 of 63); 2) he and attorney Zimmerle approached the State about entering a plea agreement because "the supplemental discovery . . . became a hurdle too high to overcome given the risk

12

involved," and that petitioner agreed with that assessment (Doc. 11-2, p. 56 of 63).

Attorney Parks testified as follows on re-cross examination: "I came in, we had a discussion about juries . . . . Then over the course of other visits, conversations, discovery review, investigation . . . we . . . came up with the supplemental discovery which was . . . much later . . . [than] . . . our discussion about juries and trial procedure. And then, it was decided not go to trial. . . . After th[e] conversation [about juries], we still proceeded as if we were going to trial. (Doc. 11-2, p. 56 of 63)

The post-conviction court dismissed petitioner's petition on July 1, 2016. (Doc. 11-1, p. 81 of 84) The post-conviction court reviewed the proceedings from the guilty plea hearing in its Memorandum Opinion, accurately quoting the colloquy between Judge Russell and petitioner at the plea acceptance hearing, presented above at pp. 7-8. (Doc. 11-1, pp. 74-75 of 84) Although it did not cite *Strickland* or any of its progeny, the post-conviction court paraphrased the standard pertaining to a criminal defendant's right to effective assistance of counsel as follows:

> Every criminal defendant has a right under both the U.S. and Tennessee constitutions to the effective assistance of counsel. The defendant is not entitled to a perfect defense, however, and the fact that counsel selected one defensible strategy over another defensible strategy does not necessarily mean that the defendant's counsel was ineffective. The issue is whether the legal representation fell below an objective standard of reasonableness and whether the services were outside the range of competence demanded of attorneys in criminal cases. If the representation fell below this standard, the defendant must also show that it is reasonably probable that but for counsel's errors, the results would have been different.

(Doc. 11-1, p. 77 of 84) The post-conviction court then summarized the evidence adduced at the post-conviction hearing (Doc. 11-1, pp. 77-78 of 84), subsequent to which it presented its impressions from the hearing as follows:

> The threshold issue is one of credibility. It is found here that Ms. Zimmerle never made the statement attributed to her by the Petitioner. Ms. Zimmerle discussed the demographics of Marshall

13

County and discussed the likely racial makeup of a Marshall County jury, but did not predict that there would be a disproportionate number of Chapel Hill residen[t]s. This judge agrees that Ms. Zimmerle would have been remiss in her duties if she had not discussed the possibility that an all-white jury makeup occurs in Marshall county from time to time. However, this judge concludes that no mention was made of Chapel Hill until the PC Petition was filed. The demeanors of the two witnesses, the sworn testimony of the Defendant at his plea acceptance hearing, and the role of the retained attorney suggest that the Petitioner was not swayed let alone coerced by statements by Ms. Zimmerle. Jail recordings persuaded the Defendant not to go to trial.

Furthermore, it cannot be said that 'but for' any remark about the racial make up of the jury, the Defendant would have refused to enter a plea. The Petitioner's family retained a private attorney, and had a remark about Chapel Hill prevented the Defendant from going to trial, surely the Defendant would have discussed the issue with retained counsel. It was retained counsel who went over the plea paperwork with the Defendant a day before the plea acceptance hearing. It was retained counsel who entered into the final negotiations with resulted in a settlement. When asked about whether Mr. Cross discussed the Chapel Hill conversation with him, Mr. Parks answered simply, 'we didn't have that conversation.' If the Defendant would have gone to trial but for the fear of twelve white men from Chapel Hill, the Defendant would surely have discussed that issue with retained counsel.

(Doc. 11-1, pp. 78-79 of 84) The post-conviction court ultimately concluded: "Neither the representation by Ms. Zimmerle nor the representation by Mr. Parks fell below the applicable standard for criminal defense attorneys. Ms. Zimmerle did not make the race-related statement which was attributed to her, and it cannot be said that but for the discussion of race between Ms. Zimmerle and the Defendant, he would have gone to trial." (Doc. 11-1, p. 79 of 84)

Petitioner filed a notice of appeal from the judgment of the post-conviction court on July 29, 2016. (Doc. 11-1, pp. 82 of 84) Petitioner raised a single issue on appeal: "Did the Post-Conviction Court commit error in its determination that the conduct of Trial Counsel was within the standard demanded of competent defense counsel?" (Doc. 11-4, p. 5 of 15) Petitioner asserted on appeal that

14

"trial counsel was ineffective in not properly guiding him with regard to entering a plea of guilty," and that "he would have followed through with his trial had it not been for the fear elicited by the racial composition commentary from his counsel . . . ."  (Doc. 11-4, pp. 13-14 of 15)

The Court of Criminal Appeals (CCA) summarized the issue on appeal as follows: "[T]he Petitioner contends that original counsel 'terrorized' him by threatening that he would receive an 'all-white-jury' if he went to trial, that these statements constituted ineffective assistance of counsel, and that they caused him to involuntarily plead guilty." *Cross v. State*, No. M2016-01578-CCA-R3-PC (Tenn.Crim.App. June 17, 2017).  (Doc. 11-6, p. 2 of 3)  The record shows that the CCA then correctly summarized the evidence adduced at the post-conviction hearing, and correctly paraphrased the post-conviction court's reason for denying petitioner's petition for post-conviction relief.  (Doc. 11-6, pp. 2-3 of 3)

In its analysis, the CCA correctly stated the two-part standard under *Strickland*, and citing *Hill v. Lockhart*, above at p. 6, the federal standard pertaining to ineffective assistance of counsel claims in the context of guilty pleas.  (Doc. 11-6, p. 3 of 3)  Applying these standards, the CCA concluded:

> [T]he post-conviction court accredited the testimony of original and successor counsel that the statements alleged in the petition were never made.  There is no proof in the record before us that would preponderate against that finding.  Furthermore, the evidence at the post-conviction hearing established that the Petitioner chose to plead guilty after reviewing the State's supplemental discovery. Accordingly, we conclude that the post-conviction court did not err in denying the petition.

(Doc. 11-6, p. 3 of 3)

The record before the court establishes the following: 1) the colloquy between Judge Russell and petitioner at the plea acceptance hearing, presented above at pp. 7-8, reveals that petitioner's guilty plea was voluntary and intelligent, and that Judge Russell's ruling on the matter is entitled to

15

a presumption of correctness; 2) although the post-conviction court did not cite *Strickland* or any of its progeny in its Memorandum Opinion, as shown above at p. 13, the post-conviction court correctly paraphrased and applied the federal standard pertaining to the right of effective assistance of counsel in the context of a guilty plea; 3) the CCA correctly cited and applied federal precedent pertaining to claims of ineffective assistance of counsel in the context of a guilty plea.

The record before the court also establishes the following: First, petitioner testified under oath at the plea acceptance hearing that he entered the plea agreement voluntarily, that he knew the ramifications of his guilty plea, and that he had no "complaints" with his attorneys up to and including the time of the plea agreement hearing. Second, petitioner testified under oath at the post-conviction hearing that he lied at the plea acceptance hearing. Third, although petitioner testified under oath at the post-conviction hearing that he was coerced into entering a guilty plea by attorney Zimmerle's alleged all-white-jury threat in March 2014, the record shows that petitioner persisted and prevailed in his demand to go to trial during the six-plus months following the alleged all-white-jury threat. More particularly, attorney Zimmerle's alleged all-white-jury threat in March and petitioner's last-minute decision in October to enter a guilty plea are too remote in time to establish a causal connection between the two. Fourth, the testimony of attorneys Zimmerle and Parks at the post-conviction hearing, as well as petitioner's own admission in those proceedings, establish that petitioner decided to enter a plea just four days before his trial and then only after he listened to the recordings of the incriminating telephone conversations. This is too much of a coincidence given that petitioner refused to enter a plea agreement during the six months preceding the plea acceptance hearing. Fifth, attorney Parks' testimony directly contradicted petitioner's testimony at the post-conviction hearing that the latter brought attorney Zimmerle's alleged all-white-jury threat to his attention. Finally, as noted above at p. 11 n. 5, ADA Bernard adduced testimony at the post-

16

conviction hearing that impeached petitioner's reputation for truthfulness and, therefore, the veracity of his claims against attorney Zimmerle. As noted above at p. 14, the post-conviction court was spot on when it wrote: "The threshold issue is one of credibility."

For the reasons explained above, the decisions of the state trial court, the post-conviction court, and the CCA did not constitute an unreasonable application of clearly established federal law, nor were their decisions based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, petitioner's claim that attorney Zimmerle's representation was deficient in connection with his decision to enter a guilty plea is without merit.

Certificate of Appealability: For a COA to issue when *habeas* relief is denied on the merits, a *habeas* petitioner must "make a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To satisfy this standard, petitioner must show that "jurists of reason could disagree with the district court's resolution of his constitutional claims **or** that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." 28 U.S.C. § 2253(c)(2); *Miller-el*, 537 U.S. at 327; *Slack*, 529 U.S. at 484. Petitioner has not made a substantial showing of the denial of a constitutional right, nor would jurists of reason conclude that this claim deserved to proceed. Therefore, a COA should not issue as to this claim.

### 3. Alleged Deficient Representation on Post-Conviction

Turning to his third claim of ineffective assistance of counsel, petitioner alleges that attorney Hall was deficient in his representation on post-conviction. The law is firmly established that, except in the single instance discussed below at ¶ II.B, petitioner has no constitutional right to effective assistance of counsel on post-conviction. *See Davila v. Davi*s, __ U.S. __, 137 S.Ct. 2058, 2062, 2065 (2017)*; Coleman v. Thompson*, 501 U.S. 722, 725 (1991); *Murray v. Giarratano*, 492 U.S. 1, 7-9 (1989); *Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987); *Carruthers v. Mays*, 889 F.3d

17

273, 288 (6th Cir. 2018).  This claim is without merit.

Certificate of Appealability:   Petitioner has not made a substantial showing of the denial of a constitutional right, nor would jurists of reason conclude that this claim deserved to proceed.  Therefore, a COA should not issue as to this claim.

### B.  Constitutionality of Petitioner's Guilty Plea

Petitioner asserts that his guilty plea "was not knowingly or voluntarily entered . . . ."  (Doc. 1, ¶ 25), p. 5 of 17)  Petitioner presented his original version of this claim on post-conviction in the context of attorney Zimmerle's alleged all-white-jury threat.  His theory for relief in the instant proceeding is different.  Petitioner asserts in the version presently before the court that, had his co-defendant Carter "told the truth to begin with," *i.e.*, that the drugs were hers as she states in her affidavit, he would not have entered a plea.  According to petitioner, because Carter did not tell the truth, he had no choice but to "get low and go," *i.e.*, to plead guilty.  (Doc. 1, ¶ 20), p. 4 of 17)  In other words, petitioner's legal theory is that, because Carter did not tell the truth, his guilty plea is constitutionally flawed.[6]

To obtain relief under § 2254, a prisoner must first exhaust his state remedies by "giv[ing] the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *see Williams v. Mitchell*, 792 F.3d 606, 613 (6th Cir. 2015).  To be "fairly presented," a *habeas* petitioner must present both the factual and legal basis for his claim to the state courts.  *Hanna v. Ishee*, 694 F.3d 596, 606 (6th Cir. 2012).  Petitioner admits that he did not exhaust the current version of this claim.  (Doc. 1, ¶¶ 20), 22), pp. 3-4 of 17)  However, he asserts that this claim

---

[6]  The undersigned addressed this claim in his August 30th R&R in the context of petitioner's motion to amend. (Docs. 14, 19)  The undersigned addresses this claim here as petitioner presented it in his petition.  (Doc. 1)

was not raised on post-conviction because of attorney Hall's deficient representation on post-conviction.

Failure to exhaust is considered a procedural default when "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Coleman*, 501 U.S. at 735 n. 1. A petitioner may defeat procedural default only by showing that there was cause for the default and prejudice resulting from the default, *Williams*, 792 F.3d at 613, or that failure to consider the claim would result in a fundamental miscarriage of justice, *Coleman*, 501 U.S. at 750.

To establish "cause" for the default, a petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *see Mason v. Mitchell*, 320 F.3d 604, 628 (6th Cir. 2003). "[A] showing that the factual or legal basis for a claim was not reasonably available to counsel, or that 'some interference by officials' made compliance impracticable," constitutes "cause" under this standard. *Murray*, 477 U.S. at 488; *see also Jamison v. Collins*, 291 F.3d 380, 388 (6th Cir. 2002)("Cause is shown when the factual basis of the claim was 'reasonably unknown' to the defendant's counsel."). To show "prejudice," the default of a claim must not merely have created a possibility of prejudice to the defendant, it must have "worked to his actual and substantial disadvantage, infecting his entire trial with errors of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982); *see Jamison*, 291 F.3d at 388. Finally, to demonstrate a "fundamental miscarriage of justice," a petitioner must make a "convincing showing" of actual innocence. *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013); *Hodges v. Colson*, 727 F.3d 517, 530 (6th Cir. 2013).

Petitioner does not allege, nor can it be liberally construed from the petition or the record,

19

that any external objective factor prevented attorney Hall from complying with the State's procedural rule.  Neither does petitioner allege, nor can it be liberally construed from the record, that attorney Hall did not raise the issue of Carter's affidavit during the post-conviction proceedings or on appeal from the judgment of the post-conviction court due to any official interference.  Consequently, petitioner cannot establish "cause" for the default.  Having failed to show "cause," it is not necessary to address the prejudice half of the established two-part cause-and-prejudice test.  The next question is whether petitioner has made a "convincing showing" of actual innocence.  As shown below at ¶ II.C, pp. 21-23, he has not.

Petitioner cites *Martinez v. Ryan*, 566 U.S. 1 (2012) and *Sutton v. Carpenter*, 745 F.3d 787 (6th Cir. 2014) in an apparent effort to save this claim from procedural default.  His apparent theory here is that, under *Martinez* and *Sutton*, attorney Hall's alleged deficient representation on post-conviction saves this claim from being procedurally defaulted.

The question in *Martinez* was "whether ineffective assistance in an initial-review collateral proceeding on a claim of ineffective assistance at trial may provide cause for a procedural default in a federal habeas proceeding."  *Martinez*, 566 U.S. at 9.  The *Martinez* court held that "[w]here, under state law, ineffective assistance in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing those claims if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective."  *Martinez*, 566 U.S. at 17.  The *Martinez* court noted further that "[t]he rule of *Coleman*," discussed above at p. 18, "governs in all but the limited circumstances recognized here . . . .  It does not extend to attorney errors in any proceeding beyond the first occasion the State allows a prisoner to raise a claim of ineffective assistance at trial, even though that initial-review collateral proceeding may be deficient for other reasons."  *Martinez*, 566 U.S. at 16.  The Sixth Circuit ruled in *Sutton* that *Martinez* applies

to cases arising in Tennessee, *i.e.*, that "ineffective assistance of post-conviction counsel can establish cause to excuse a Tennessee defendant's procedural default of a substantial claim of ineffective assistance at trial." *Sutton*, 745 F.3d at 795-96. Four years after *Sutton* was decided, the Supreme Court in *Davila v. Davis*, above at p. 18, clarified *Martinez* writing that "ineffective assistance by a prisoner's postconviction counsel as cause to overcome the default of a single claim – ineffective assistance of trial counsel – in a single context – where the State effectively requires a defendant to bring that claim in state postconviction proceedings rather than on direct appeal." *Davila*, 137 S.Ct. at 2062-63.

As established above, *Martinez* and *Sutton* pertain solely to claims of ineffective assistance of trial counsel that would be lost due to ineffective assistance of counsel in an initial-review collateral proceeding. In short, *Martinez* and *Sutton* are not applicable to Carter's alleged failure to take responsibility for the drugs. Consequently, because the current version of this claim was not exhausted in state court, and because *Martinez* and *Sutton* are not applicable, this claim is procedurally defaulted for purposes of federal *habeas* relief.

<u>Certificate of Appealability</u>: Jurists of reason would not find the court's procedural default determination debatable on this claim. Therefore, a COA should not issue as to this claim.

### C. Petitioner's Actual Innocence Claim

Petitioner asserts in his petition that he is actually innocent of the crime to which he pleaded guilty, and that Carter's affidavit proves his innocence. (Doc. 1, ¶¶ 18), 20), 26), pp. 2-4 of 17) Petitioner admits that he also did not exhaust his actual-innocence claim (Doc. 1, ¶ 22), p. 4 of 17), that his failure to do so was again due to attorney Hall's deficient representation on post-conviction (Doc. 1, ¶¶ 20), 22), pp. 3-4 of 17), and he again cites *Martinez* and *Sutton* in an effort to avoid procedural default.

*Martinez* and *Sutton* are not relevant to this claim for the same reasons explained above at pp. 20-21. Petitioner also fails to satisfy the two-part cause-and-prejudice test to excuse procedural default for the same reasons explained above at p. 20. The only question remaining is whether petitioner has made a "convincing showing" of his actual innocence to excuse the procedural default of this claim.

The undersigned addressed this claim in his August 30th R&R. (Docs. 14, 19) The undersigned's reasoning is as applicable here as it was then, and is quoted below in relevant part for convenience of reference:

> . . . . Petitioner argues that Carter's statement claiming responsibility for possessing the cocaine is 'newly discovered evidence' establishing his 'actual innocence.' While actual innocence is not an independent ground for habeas relief, 'a petitioner's showing of a credible claim of innocence allows him to skirt a procedural defect in his claim so that a federal court may address his allegation of constitutional error.' 'To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial.' A petitioner must establish 'that 'it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt.'' This 'actual innocence exception should 'remain rare' and 'only be applied in the extraordinary case.''

> . . . . Carter's statement does not establish Petitioner's actual innocence. Her statement plainly contradicts Petitioner's plea hearing testimony, which reflected that Petitioner brought the cocain, and only gave it to Carter to hide after officers initiated a stop of the vehicle. Plea hearing testimony ''constitute[s] a formidable barrier in any subsequent collateral proceedings' because '[s]olemn declarations in open court carry a strong presumption of veracity.'' Additionally, the Court 'may consider how the timing of [Carter's statement] and the likely credibility of the affiant[] bear on the probable reliability of' the statement. It is well-established that one co-defendant's statement that exculpates another co-defendant may be 'highly suspect' where, as here, both defendants had already 'been convicted and covered by double jeopardy.' Post-conviction statement like Carter's 'are inherently suspect because codefendants

22

may try to assume full responsibility for the crime without any adverse consequences.' In this case, Carter's statement is simply not sufficiently credible to overcome the extraordinarily high standard Petitioner must meet fo the Court to excuse procedural default of his proposed claims due to actual innocence.

(Doc. 19, pp. 15-16 of 17)(citations and internal references to the record omitted)

For the reasons explained above, petitioner has failed to make a "convincing showing" of actual innocence. Accordingly, this claim is procedurally defaulted for purposes of federal *habeas* review.[7]

Certificate of Appealability: Jurists of reason would not find the court's procedural default determination debatable on this claim. Therefore, a COA should not issue as to this claim.

## C. Evidentiary Hearing

"Under the AEDPA, evidentiary hearings are not mandatory." *Vroman v. Brigano*, 346 F.3d 598, 606 (6th Cir. 2003). In determining whether to grant an evidentiary hearing, the district court must decide whether such a hearing would enable a *habeas* petitioner to prove allegations that, if true, would entitle him to federal *habeas* relief. *See Hartman v. Bagley*, 492 F.3d 347, 361 (6th Cir. 2007), *cert denied*, 554 U.S. 924 (2008)(citing *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). "[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Schriro*, 550 U.S. at 474; *see also Muniz v. Smith*, 647 F.3d 619, 625 (6th Cir. 2011)("A district court is not required to hold an evidentiary hearing if the record 'precludes habeas relief.'")(quoting *Shirio*). Because, petitioner's claims either are without merit or are barred from review, an evidentiary hearing is not warranted.

## III. CONCLUSIONS AND RECOMMENDATIONS

---

[7] Petitioner asks the court to "at least" remand the case to the sate court so that a full and fair hearing can be had on his actual-innocence claim. (Doc. 1, ¶¶ 20), 26), pp. 3-5 of 17) The district court does not have the statutory authority to remand a federal *habeas* proceeding to state court for an evidentiary hearing. *See Harris v. Haeberlin*, 752 F.3d 1054, 1057-58 (6th Cir. 2014); *Harris v. Stovall*, 212 F.3d 940, 943 n. 1 (6th Cir. 2000).

23

For the reasons explained above, the Magistrate Judge **RECOMMENDS** that: **1)** no evidentiary hearing be held in this matter; **2)** petitioner's petition for *habeas corpus* relief under to 28 U.S.C. § 2254 be **DENIED**; **3)** this action be **DISMISSED WITH PREJUDICE**; **4)** acceptance and adoption of this R&R constitute the **FINAL JUDGMENT** in this action; **5)** should petitioner file a notice of appeal, such notice **BE DOCKETED** as both a notice of appeal and application for a COA which **SHOULD NOT ISSUE**.

The parties have fourteen (14) days of being served with a copy of this R&R to serve and file written objections to the findings and recommendation proposed herein. A party shall respond to the objecting party's objections to this R&R within fourteen (14) days after being served with a copy thereof. Failure to file specific objections within fourteen (14) days of receipt of this R&R may constitute a waiver of further appeal. *Thomas v. Arn*, 474 U.S. 140, 142, *reh'g denied*, 474 U.S. 111 (1986); *see Alspaugh v. McConnell*, 643 F.3d 162, 166 (6th Cir. 2011).

**ENTERED** this the 22nd day of April, 2019.


/s/ Joe B. Brown
Joe B. Brown
United States Magistrate Judge